UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GRACIELA M. CONTRERAS, | No. 2:14-cv-01282-KJM-KJN |
| Plaintiff, | |
| v. | ORDER |
| RYAN MCCARTHY, SECRETARY OF THE UNITED STATES ARMY, | |
| Defendant. | |

In this disability discrimination case, defendant Ryan McCarthy, Secretary of the United States Army,[1] moves for summary judgment on the sole remaining claim (claim 2): Failure to accommodate under the Rehabilitation Act. Mot. for Summary Judgment ("MSJ"), ECF No. 104. Plaintiff Graciela Contreras opposes the motion, MSJ Opp'n, ECF No. 107, and defendant has replied, MSJ Reply, ECF No. 114. For the reasons set forth below, the court GRANTS defendant's motion and enters judgment in his favor.

---

[1] Plaintiff named Mark T. Esper, Secretary of the Army, as defendant in this action. *See* Second Amended Complaint, ECF No. 94. Under Federal Rule of Civil Procedure 25(d), the court automatically substitutes Ryan McCarthy, current Secretary of the United States Army, as named defendant.

1

I.      BACKGROUND

   A.      Factual Background

Plaintiff was a non-dual status National Guard Technician, working for over seven years as an Equal Employment Specialist at the California National Guard office in Sacramento, California. Second Am. Compl. ("SAC") ¶ 7, ECF No. 94. Under the National Guard Technician Act, there are two types of National Guard technicians: dual status, 32 U.S.C. § 709(b), and non-dual status, 32 U.S.C. § 709(c). SAC ¶ 9; *see also* 10 U.S.C. §§ 10216, 10217. A non-dual status technician, as plaintiff was at all relevant times, is not required to maintain military membership in the Reserves. MSJ at 2. Beginning in March 2008, plaintiff filed several Equal Employment Opportunity ("EEO") complaints alleging hostile work environment, harassment, mental and physical disability discrimination and retaliation. MSJ Opp'n at 2–3; *see* SAC ¶ 11 (alleging 2008 EEO complaints "for hostile work environment harassment, mental and physical disability discrimination, and retaliation [] based on alleged misconduct by [] [EEO] Manager Leo LeCompte and [] Director of Human Resources Lawrence Cooper."). Plaintiff alleges here that on May 4, 2011, she submitted a request for Reasonable Accommodation ("RA") based on her Post Traumatic Stress Disorder ("PTSD") and Bi-Polar disorder, but defendant never processed the claim. MSJ Opp'n at 3; Contreras Decl. ¶ 6, ECF No. 107-3, Ex. A. Plaintiff lodged a second RA request on February 22, 2012, in which she "specifically requested to work at another work site away from JFHQ [Joint Forces Headquarters] hostile work environment or allow her to work from home." *Id.*; Ching Decl., ECF No. 104-3, Ex. B at 1.

On or about March 27, 2012, defendant responded to plaintiff's February 22, 2012 RA request by offering her an opportunity to perform her same job from Mather, California, only a few miles from her current office in Sacramento and where the California National Guard maintained office space. MSJ at 3 (citing Mosher Decl. ¶ 5, ECF No. 104-4, Ex. A at 4). Plaintiff denies that any such offer was made, but says rather "the agency was thinking of maybe offering [me] a position off base but never offered [] an exact location." MSJ Opp'n at 3 (internal quotations omitted); Contreras Decl. ¶ 14. The Mather offer notwithstanding, on March 28, 2012, plaintiff ultimately changed her RA request to work from home only, and at that point no longer

2

1  requested relocation as a suitable alternative. MSJ at 3 (citing Mosher Decl. ¶ 5, Ex. A at 4, Ex.
2  B); MSJ Opp'n at 4; Contreras Decl. ¶ 16; SAC ¶ 47.

3        On February 7, 2012, while plaintiff's EEO complaints and RA requests were
4  pending, defendant approved plaintiff's sick leave request and request for leave under the Family
5  and Medical Leave Act ("FMLA"). MSJ at 2; SAC ¶¶ 15, 17, 20. On June 14, 2012, defendant
6  informed plaintiff she had exhausted her FMLA and paid leave and she must return to work no
7  later than July 5, 2012, with medical documentation or a fitness-for-duty certification stating she
8  was able to return to work. MSJ at 4 (citing Ching Decl., Ex. G; Anderson Decl. ¶ 6, ECF No.
9  104-5, Ex. B; SAC ¶ 28). Defendant also informed plaintiff she could elect to enter leave without
10 pay status if she "wish[ed] to remain in an approved absence status other than FMLA for more
11 than 30 days." *Id.* (citing Ching Decl., Ex. G; Anderson Decl. ¶ 6, Ex. B).

12       While on leave, plaintiff continued to receive psychiatric care from Dr. Paul
13 Jurkowski, whom she had seen previously. MSJ Opp'n at 3. Defendant contends he actively
14 sought to address plaintiff's RA request, including by reaching out to plaintiff and Dr. Jurkowski
15 while plaintiff was on leave. MSJ at 3 (citing SAC ¶¶ 25, 26, 41, 61, Ex. 6). Dr. Jurkowski
16 recommended defendant permit plaintiff to work from home for a limited six-month period, from
17 February 27, 2012 to August 26, 2012. *Id.* at 4 (citing SAC ¶¶ 17, 21, Ex. 2). As noted, on
18 March 28, plaintiff instead requested permission to work from home on a full-time basis. *Id.*
19 Defendant denied plaintiff's request because "it is not possible to perform the essential functions
20 of an EEO Specialist from home." *Id.* (citing SAC ¶ 30; Ching Decl., Ex. H at 1–2). On June 25,
21 2012, defendant offered plaintiff two alternative accommodations: (1) an EEO Specialist position
22 in Los Angeles, or (2) a Program Analyst position at a Sacramento location. *Id.* at 5 (citing SAC
23 ¶¶ 30, 42; Ching Decl., Ex. H); MSJ Opp'n at 4. Plaintiff declined both options as unreasonable.
24 *Id.*; MSJ Opp'n at 4.

25       On July 23, 2012, defendant again notified plaintiff she must report to duty with
26 medical clearance by August 2, 2012 or face termination for abandonment of her position for
27 failure to report since July 6, 2012. *Id.* at 5; MSJ Opp'n at 4–5. Plaintiff did not report to work
28

3

1  or provide medical clearance; as a result, defendant terminated her from her position.  SAC ¶ 35;
2  MSJ Opp'n at 5; Mot. at 5.

3       B.     Procedural Background

4            Plaintiff filed the operative Second Amended Complaint on April 26, 2018,
5  making out three claims: (1) Failure to accommodate under the Americans with Disabilities Act
6  ("ADA"), (2) failure to accommodate under the Rehabilitation Act, and (3) improper refusal to
7  continue plaintiff's FMLA leave.  *See* SAC ¶¶ 47, 57–58, 62–63.  In response to defendant's
8  motion to dismiss the Second Amended Complaint, plaintiff conceded the court lacks jurisdiction
9  over claims 1 and 3 (ADA and FMLA claims); accordingly, the court dismissed those claims.
10  Opp'n to Second Mot. to Dismiss ("MTD") ECF No. 97; Second MTD Order, ECF No. 102.  The
11  court also dismissed plaintiff's Rehabilitation Act claim (claim 2), but only "insofar as it arises
12  from any alleged hearing impairment and insofar as it includes a disparate treatment claim."
13  Second MTD Order at 3.  The parties disagree as to the effect of this dismissal on the sole
14  remaining issue here.  Defendant contends what remains of the "claim is based on the June 2012
15  denial of Plaintiff's requested accommodation to work from home."  MSJ at 6.  Plaintiff, on the
16  other hand, believes "[t]he claim is broader than Defendant states"; she says instead that the claim
17  is "based on the June 2012 denial of the Plaintiff's reasonable accommodation request in its
18  entirety specifically to work at another work site . . . or allow Plaintiff to work from home."  MSJ
19  Opp'n at 5.

20            On March 22, 2019, the court heard oral argument on the motion.  Counsel
21  Rodney Williams appeared on behalf of plaintiff; counsel Chi Soo Kim appeared on behalf of
22  defendant.  At hearing, the court permitted supplemental briefing on the classification of an
23  alternative employment position offered to plaintiff.  Plaintiff filed a supplemental response that
24  same day, ECF No. 116, and defendant filed a responding brief on March 27, 2019, ECF No. 117.
25  On April 12, 2019, plaintiff moved to supplement the summary judgment record.  Mot. to Suppl.,
26  ECF No. 118.  On May 17, 2019, defendant opposed the motion, Opp'n to Suppl. Mot., ECF No.
27  121, and on May 24, 2019, plaintiff lodged a reply, Reply to Suppl. Mot., ECF No. 122.
28            All matters have been submitted and the court resolves them here.

## II.     LEGAL STANDARD

A court will grant summary judgment "if . . . there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The "threshold inquiry" is whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

In determining summary judgment, a court uses a burden-shifting scheme. The moving party must first satisfy its initial burden, which requires "com[ing] forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citation and quotation marks omitted). If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970). If the moving party meets its initial burden, however, the burden then shifts to the nonmoving party, which "must establish that there is a genuine issue of material fact." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585 (1986). To carry their burdens, both parties must "cit[e] to particular parts of materials in the record . . .; or show [ ] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1); *see also Matsushita*, 475 U.S. at 586 ("[The nonmoving party] must do more than simply show that there is some metaphysical doubt as to the material facts."). Moreover, "the requirement is that there be no *genuine* issue of *material* fact . . . . Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 247-48 (original emphasis).

In deciding summary judgment, the court draws all inferences and views all evidence in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587-88; *Whitman v. Mineta*, 541 F.3d 929, 931 (9th Cir. 2008). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391

1  U.S. 253, 289 (1968)).  The Supreme Court has taken care to note that district courts should act
2  "with caution in granting summary judgment," and have authority to "deny summary judgment in
3  a case where there is reason to believe the better course would be to proceed to a full trial."
4  *Anderson*, 477 U.S. at 255.

5  III.   ANALYSIS

6  Section 501 of the Rehabilitation Act provides the sole judicial remedy for
7  disability discrimination claims by federal employees.  29 U.S.C. § 791; *Boyd v. U.S. Postal*
8  *Serv.*, 752 F.2d 410, 413 (9th Cir. 1985).  An employer discriminates against a qualified
9  employee by "'not making reasonable accommodations to the known physical or mental
10 limitations of an otherwise qualified individual with a disability . . . , unless [the employer] can
11 demonstrate that the accommodation would impose an undue hardship on the operation of the
12 business of [the employer].'"  *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1089 (9th Cir. 2002)
13 (alteration in original) (emphasis removed) (quoting 42 U.S.C. § 12112(b)(5)(A)).  "The question
14 whether a particular accommodation is reasonable 'depends on the individual circumstances of
15 each case' and 'requires a fact-specific, individualized analysis of the disabled individual's
16 circumstances and the accommodations that might allow [her] to meet the program's standards.'"
17 *Vinson v. Thomas*, 288 F.3d 1145, 1154 (9th Cir. 2002) (quoting *Wong v. Regents of the Univ. of*
18 *Cal.*, 192 F.3d 807, 818 (9th Cir. 1999)).

19 To establish a claim for failure to accommodate under the Rehabilitation Act, a
20 plaintiff must satisfy three elements: "(1) she is a person with a disability, (2) she, with or without
21 accommodation, can perform the essential functions of her job, and (3) if accommodation is
22 required under (2), then the plaintiff must show that a reasonable accommodation is possible."
23 *Demorest v. Napolitano*, No. 09-1310RAJ, 2010 WL 3211947, at *4 (W.D. Wash. Aug. 11, 2010)
24 (citing *Buckingham v. United States*, 998 F.2d 735, 739–40 (9th Cir. 1993)), *aff'd*, 443 F. App'x
25 287 (9th Cir. 2011).  Thus, plaintiff bears the initial burden to "show that she can perform the
26 essential functions of the job," *id.*, and if an accommodation is necessary to perform those
27 functions, plaintiff must also show that defendant failed to provide a potential reasonable
28 accommodation, *Zivkovic*, 302 F.3d at 1089.  *See also Dark v. Curry Cty.*, 451 F.3d 1078, 1088

1   (9th Cir. 2006) (Plaintiff "has the burden of showing the existence of a reasonable

2   accommodation that would have enabled [her] to perform the essential functions of an available

3   job."). To defeat summary judgment, "a plaintiff . . . need only show that an accommodation

4   seems reasonable on its face, i.e., ordinarily or in the run of cases." *US Airways, Inc. v. Barnett*,

5   535 U.S. 391, 401 (2002) (quotation omitted).

6         A.      <u>Remaining Claim at Issue</u>

7         As an initial matter, as noted above, the parties dispute the scope of the sole

8   remaining claim in this matter. Defendant contends there is "one narrow claim remaining from

9   EEO Complaint No. 2012-026—a claim for failure to accommodate under the Rehabilitation Act

10  based on the June 25, 2012 denial of Plaintiff's request for accommodation to work from home."

11  MSJ Reply at 3. Plaintiff believes the claim is broader, and covers defendant's delayed response

12  to her multiple EEO complaints and a failure to operate in good faith during the interactive

13  process required under the Rehabilitation Act. MSJ Opp'n at 7–15.

14        On this point, defendant's position is correct. In the court's order dismissing

15  plaintiff's first amended complaint, the court framed the remaining issue as "based on EEO

16  Complaint No. 2012-026." First MTD Order, ECF No. 93, at 4. This characterization relied on

17  plaintiff's own concession. *See* Opp'n to Fed. Defs.' MTD, ECF No. 84, at 11 ("[W]e concur

18  with the DEFENDANTS' [sic] that their motion to dismiss should be denied in part and claims

19  based on EEO Complaint No. 2012-026 . . . when Plaintiff's request for accommodation to work

20  from home was denied on June 25, 2012 should survive . . . ."); *see also* ECF No. 88 at 2

21  (defendant's reply agreeing with plaintiff's representations that only claims based on EEO

22  Complaint No. 2012-026 are potentially viable).

23        The court's order granting defendant's second motion to dismiss further narrowed

24  any remaining claims based on EEO Complaint No. 2012-026. There, the court dismissed

25  Rehabilitation Act claims based on hearing impairment and disparate treatment and noted

26  defendant's election to withdraw its motion regarding plaintiff's reasonable accommodation

27  claim. Second MTD Order at 2–3. Thus, the only surviving issue is plaintiff's reasonable

28  accommodation claim based on EEO Complaint No. 2012-026 and defendant's June 25, 2012

1    denial thereof.  Plaintiff formally concedes as much.  *See* Undisputed Material Fact ("UMF") 1,
2    ECF No. 107-1 ("Plaintiff Graciela Contreras' claim for failure to accommodate under the
3    Rehabilitation Act is the sole claim remaining in the Second Amended Complaint.").

4           Given the narrow scope of the remaining claim, any arguments or claims based on
5    EEO complaints or reasonable accommodation requests other than EEO Complaint No. 2012-026
6    are foreclosed.  *See* MSJ Opp'n at 3 (referencing May 4, 2011 reasonable accommodation
7    request); *id.* at 4, 11 (referencing filing of third EEO complaint); *id.* at 14 ("Plaintiff filed a series
8    of EEO complaints . . . .").  The same holds for claims, facts or allegations that defendant failed to
9    faithfully engage in the interactive process.  *See, e.g.*, MSJ Opp'n at 2 ("[T]hey failed their
10   mandatory obligation under the Rehabilitation Act to engage in an interactive process"), 10 ("We
11   would submit that the Defendant did not extensively engage in the interactive process.").

12          A court may disregard a party's attempt to insert new claims, theories or
13   allegations in opposition to summary judgment.  *Pickern v. Pier 1 Imports (U.S.), Inc.*, 457 F.3d
14   963, 969 (9th Cir. 2006); *see also Patel v. City of Long Beach*, 564 F. App'x 881, 882 (9th Cir.
15   2014) ("[A] plaintiff cannot raise a new theory for the first time in opposition to summary
16   judgment." (citing *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1292–93 (9th Cir. 2000); *Wasco
17   Products, Inc. v. Southwall Techs., Inc.*, 435 F.3d 989 (9th Cir. 2006)).  The second amended
18   complaint makes no allegations that defendant failed to adequately engage in the interactive
19   process.  *See generally* SAC; *see also* MSJ at 13 n.7 ("It does not appear that Plaintiff even
20   alleges a failure to participate in the interactive process in good faith.  In an abundance of caution,
21   Defendant addresses this issue." (citation omitted)).  Yet, plaintiff advances this theory in her
22   opposition.  *See* MSJ Opp'n at 2, 10.  The court cannot countenance such a tardy attempt to
23   interject a new theory of relief.  Similarly, to the extent plaintiff attempts to incorporate facts or
24   arguments foreclosed by the court's prior orders dismissing certain claims and narrowing the sole
25   surviving issue, the court also disregards these efforts.  *See* Petty Decl., ECF No. 107-5 (failing to
26   address, even remotely, plaintiff's work from home request); Wong Decl. ¶ 4, ECF No. 107-6
27   (addressing alleged "illegal" termination, i.e., wrongful termination); Contreras Decl. ¶ 21
28   (speaking to discrimination-related claims).  *Cf. SIC Metals, Inc. v. Hyundai Steel Co.*, No. SACV

1   18-00912-CJC (PLAx), 2018 WL 6842958, at *7 (C.D. Cal. Nov. 14, 2018) (dismissing
2   promissory estoppel claims as repackaged breach of contract claims previously dismissed).
3     The only remaining claim in this matter, as plaintiff frames it, is based on "EEO
4   Complaint No. 2012-026 . . . when Plaintiff's request for accommodation to work from home was
5   denied on June 25, 2012[.]"  Opp'n to Fed. Defs.' MTD at 11.
6     B. Plaintiff's Insufficient Showing Re: Reasonableness of Accommodation Request
7     Under the Rehabilitation Act, discrimination includes "not making reasonable
8   accommodations to the known physical or mental limitations of an otherwise qualified individual
9   with a disability," unless defendant "can demonstrate that the accommodation would impose an
10  undue hardship."  42 U.S.C. § 12112(b)(5)(A).  As pertinent here, a reasonable accommodation
11  may include "job restructuring, part-time or modified work schedules[] [or] reassignment to a
12  vacant position."  *Id.* § 12111(9)(B).  To determine whether an accommodation request
13  constitutes an undue hardship, courts generally consider a variety of factors, *see id.*
14  § 12111(10)(B); however, "Employers are not required to modify the essential functions of a job
15  in order to accommodate an employee under the Rehabilitation Act," 45A Am. Jur. 2d *Job*
16  *Discrimination* § 198 (2020).  To ultimately prevail, plaintiff bears the burden of showing the
17  existence of a reasonable accommodation.  *Dark*, 451 F.3d at 1088.
18    Here, defendant contends, "Plaintiff failed to identify the existence of any specific
19  reasonable accommodation that the agency could have provided but refused to provide."  MSJ
20  Reply at 1.  Instead, plaintiff has identified two EEO specialist positions from December 2018, a
21  period long after her March 28, 2012 accommodation request, one at Naval Medical Command in
22  Florida and one at the Army Communications Electronics Command in Maryland.  *Id.* (citing
23  MSJ Opp'n, Ex. A, ECF No. 107-2, at 2, 4).  Defendant also argues plaintiff fails to refute "the
24  extensive evidence submitted by Defendant that it is not possible to perform the essential
25  functions of Plaintiff's EEO Specialist position from home . . . ."  *Id.* at 2.
26    Plaintiff's opposition advances three arguments: (1) defendant never offered
27  plaintiff the opportunity to work from home or a different worksite, (2) defendant's offer to
28  transfer plaintiff to a position in Los Angeles was made in bad faith, and (3) defendant's

alternative offer to reassign plaintiff to a new position in Sacramento also was made in bad faith. MSJ Opp'n at 7–15. In other words, plaintiff argues defendant either did not offer an accommodation or the accommodations he did offer were unreasonable.

Plaintiff falls far short of meeting her burden to survive summary judgment. "[T]o defeat a defendant/employer's motion for summary judgment[,] [plaintiff] need only show that an 'accommodation' seems reasonable on its face, i.e., ordinarily or in the run of cases." *Barnett*, 535 U.S. 391, 401 (2002); *see also id.* (citing *Reed v. LePage Bakeries, Inc.*, 244 F.3d 254, 259 (1st Cir. 2001) ("plaintiff meets burden on reasonableness by showing that, 'at least on the face of things,' the accommodation will be feasible for the employer.")). Here, plaintiff presents no evidence her accommodation request was reasonable.

It is undisputed plaintiff's March 2012 accommodation request was to work from home exclusively. *See* SAC ¶ 47 ("Plaintiff requested reasonable accommodation of her disabilities from Defendant in the form of a work from home and/or recuperative leave."); Mosher Decl. ¶ 5, Ex. B at 1 (March 28, 2012 email from plaintiff explaining, "I have decided I want to work from home as opposed to working from another location."); Contreras Decl. ¶ 15, Ex. D at 2 (March 27, 2012 email from plaintiff stating, "I have since thought about it and am still requesting to work from home, as my psychiatrist insists I do."); Prevost Decl. ¶ 7, ECF No. 107-4 ("I advised [plaintiff] to communicate back to the Agency her desire to work at home as her doctor requested."). Plaintiff presents no evidence to support her position that her request was reasonable.

On the other hand, defendant submits substantial evidence showing the essential functions of an EEO Specialist cannot be performed remotely. Defendant provides the declaration of William Anderson, State Equal Employment Manager for the California National Guard. Anderson Decl. ¶ 1. Attached to Anderson's declaration is the EEO Specialist Position Description in effect during 2012. *Id.* ¶ 4, Ex. A. Anderson summarizes the essential functions of the position as described in the Description:

> a) Meets and consults regularly with employees and all levels of management to locate, define, and correct deficiencies or problem areas.

10

          b) Participates in meetings with community action organizations interested in improving equal employment opportunity relationships. May address groups regarding EEO policies, practices, and goals in the National Guard. Solicits community support in assisting the Guard to eliminate under-representation of minority groups.

          c) Provides training to supervisors on preventing or remedying discrimination and may provide counseling to employees who feel they may have discrimination complaints.

          d) Works closely with Support Personnel management office sections in developing recruiting and employment strategies, which insure that equal employment opportunity goals are achieved.

*Id.*; *see also* Ching Decl. ¶ 10, Ex. H at 1 ("[I]t is imperative to recognize that an EEO Specialist *must interact* with potential complainants, supervisors, managers, offices, other agencies, and the public. These tasks cannot effectively be accomplished from home." (emphasis in original)). Plaintiff presents no evidence, or argument for that matter, to the contrary. *See* Reply at 2 ("Plaintiff does not respond to or dispute that the following essential functions of an EEO Specialist cannot be completed from home."). At most plaintiff offers the declaration of Victoria Prevost, plaintiff's EEO representative, averring, "I had personal knowledge of other non-minority individuals permitted to telework; thus, I was surprised that Ms. Mosher [the EEO Manager for the California National Guard] would not allow her to Tele-Commute from home." Prevost Decl. ¶ 3. Ms. Mosher does not identify the positions those individuals allowed to work from home held. Her statement does nothing to undermine defendant's evidence showing that plaintiff's particular position, EEO Specialist, could not be performed from home.

      Moreover, plaintiff presents no evidence to rebut defendant's assertion that allowing her to work from home full-time would pose an undue hardship on the agency because of a severe staffing shortage. *See* Mosher Decl. ¶ 8, Ex. D at 1 (explaining plaintiff's unexpected departure coupled with other recent departures "has made it virtually impossible [for the EEO office] to meet [its] obligations . . . ."); Ching Decl., Ex. H at 1-2 (same).

      As reviewed above, "[t]he question whether a particular accommodation is reasonable 'depends on the individual circumstances of each case' and 'requires a fact-specific, individualized analysis of the disabled individual's circumstances and the accommodations that

11

1     might allow [her] to meet the program's standards.'"  *Vinson*, 288 F.3d at 1154.  In other words,
2     there is no per se rule of reasonableness; to prevail on the merits of her claim a plaintiff must
3     satisfy the minimal burden of showing her accommodation request was "reasonable on its face."
4     *Barnett*, 535 U.S. at 401.  Plaintiff fails to meet her burden of showing a disputed question of
5     material fact as to the reasonableness of her accommodation request.

6           Moreover, plaintiff's burden is particularly high given the nature of her request.
7     As the EEO Specialist Position Description details, there are certain functions that cannot be
8     performed from home. Anderson Decl. ¶ 4, Ex. A; *see* Ching Decl. ¶ 10, Ex. H at 1.  Permitting
9     plaintiff to work exclusively from home would effectively create a new or different position.  As
10    defendant correctly argues, "An employer is under no obligation to create a new position for a
11    disabled employee."  Mot. at 9 (citing *Wellington v. Lyon County Sch. Dist.*, 187 F.3d 1150, 1155
12    (9th Cir. 1999)); *see also* 45A Am. Jur. 2d *Job Discrimination* § 207 (2020) ("It is the employee's
13    burden to identify the accommodation, and an employer need not reassign an employee if no
14    position is vacant, nor is the employer obliged to create a new position to accommodate the
15    employee[.]").

16          On the record here, there are no undisputed questions of fact that plaintiff's
17    accommodation request was reasonable.  Summary judgment must be entered in defendant's
18    favor.

19        C.    <u>Plaintiff's Motion to Supplement the Record</u>

20          On April 12, 2019, plaintiff moved to supplement the record with a "newly
21    uncovered email" plaintiff sent on January 24, 2012, to a non-party, Kathryn Lindberg-McBride,
22    containing an email chain in which plaintiff explains why her position can be accomplished from
23    home and may be more efficient, and Steven Read, Equal Employment Manager, affirmatively
24    acknowledges receipt of plaintiff's proposal.  Mot. to Suppl. at 8 (citing Lindberg-McBride Decl.,
25    Ex. A, ECF No. 118-2, at 2–3).  Plaintiff argues this email must be considered by the court
26    because it "strongly negate[s] [defendant's] argument that Plaintiff did not meet her
27    reasonableness burden."  *Id.* at 3.

28

12

1           Defendant opposes the motion, arguing plaintiff's opposition to summary
2    judgment already substantively included the purported "newly uncovered email." Opp'n to
3    Suppl. Mot. at 3 (citing Contreras Decl. ¶ 9, Ex. B (including same May 4, 2011 email to "SMSgt
4    Michael Hunt")). Thus, defendant argues, it is not the subsequent email chain plaintiff attempts
5    to bring to the court's attention, but the previously filed January 24, 2012 email containing the
6    May 4, 2011 correspondence. *Id.* As a result, plaintiff's motion "constitute[s] improper
7    argument that Plaintiff could have raised during briefing or at the hearing." *Id.* at 3.

8           Plaintiff's motion to supplement the record is denied. Plaintiff waived any
9    contention her work-from-home request was reasonable by failing to raise it in her summary
10   judgment opposition or at hearing. "It is well-established that a party's failure to raise an issue in
11   opposition to a motion for summary judgment operates as a waiver of that issue." *Yonemoto v.*
12   *McDonald*, No. CIV. 11-00533 JMS, 2015 WL 1863033, at *7 (D. Haw. Apr. 22, 2015) (citing
13   *Image Tech. Serv., Inc. v. Eastman Kodak*, 903 F.2d 612, 615 n.1 (9th Cir. 1990)).[2] Plaintiff
14   concedes as much. *See* Reply to Suppl. Mot. at 2 ("During Oral Argument this Court asked the
15   question on [sic] related to whether the Plaintiff ever indicated that she could effectively work
16   from home. The Defendant's counsel indicated no and it was 'Plaintiff's burden to prove.'").

17          Additionally, the email exchange between plaintiff and Kathryn Lindberg-
18   McBride does not constitute newly discovered evidence that necessitates supplementing the
19   record. As defendant correctly argues, Opp'n to Suppl. Mot. at 3, the thrust of plaintiff's motion
20   is based on evidence already in the record, *see* Mot. to Suppl. at 3 ("Plaintiff offered a detailed
21   proposal to Defendant in an effort to meet the requirements to continue her employment . . . ."), 6
22   ("This information directly goes to the reasonableness question."), 8 (reproducing entirety of
23   accommodation request); *see also* Contreras Decl. ¶ 9, Ex. B (containing same reproduced May 4,

---

[2] It is also not incumbent upon the court to exhaustively search the record for evidence favorable to plaintiff's position. *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001) ("[A] district court is 'not required to comb the record to find some reason to deny a motion for summary judgment' and [] '[i]f a party wishes the court to consider an affidavit for more than one issue, the party should bring that desire to the attention of the court.'" (second alteration in original) (citation omitted)).

2011 email correspondence).  To the extent plaintiff argues it is defendant's knowledge of plaintiff's email that is the newly discovered evidence and not the original email thread already in the record, *id.* at 8, this argument lacks merit.  Defendant's acknowledgment is relevant only to the extent defendant denies receipt of plaintiff's May 4, 2011 communication; defendant does not.  Rather, defendant's main contention, and the court's reason for granting summary judgment above, is that plaintiff has failed to satisfy her evidentiary burden on summary judgment in the first instance, not that plaintiff never sent the January 24, 2012 email to Steven Read, which included the May 4, 2011 communication.

Plaintiff's motion to supplement the record is denied.

IV.  CONCLUSION

For the reasons set forth above, defendant's motion for summary judgment, ECF No. 104, is GRANTED and plaintiff's motion to supplement the record, ECF No. 118, is DENIED.  The Clerk of Court is directed to enter judgment in defendant's favor and CLOSE this case.

IT IS SO ORDERED.

DATED: July 13, 2020.

_____
CHIEF UNITED STATES DISTRICT JUDGE